I don't know if it was a coincidence. Just for the record, may it please the Court to enjoy on behalf of the defendants and appellants. And I think this is just another opportunity to look at Garcetti, Your Honors. Mr. Robinson has basically, he alleges one adverse employment action. He wasn't promoted from sergeant to lieutenant. And his allegation is that, well, that was in retaliation for his having reported misconduct on numerous occasions to other members of the department and many times in violation of established chain of command. And I think Your Honors probably have noted that district court actually found, without any ambiguity, his statements did violate the chain of command. And that's one issue. But in terms of the Garcetti issue, again, I would, as I did in the prior argument, I would urge the Court to read Garcetti as establishing a pretty, a very sharp dichotomy between citizen speech and speech that you engage in because it's your job to do so. It's part of your job. You're being paid to do it. And most of the statements that Mr. Robinson relies on in support of his First Amendment claim, I would submit, fall into that category of speech that is not citizen speech. As a sergeant with the police department, certainly everyday people would expect that sergeant to report potential misconduct that he observes being engaged in by other officers. And that's what he did on multiple occasions. And when he did that, that kind of speech is very similar to the cases cited in our briefs. Let me ask you this. The district court judge here held that the scope of Robinson's employment duties was a question of fact. Isn't that what he said? The judge did say that. Okay. That's what he found. And so tell me why Judge Hawkins's opinion in Posey, which is the law of the Ninth Circuit, is not controlling. Obviously, Judge Hawkins's opinion must be considered, and the effect of it has to be considered here. But it's controlling here. Yes, Your Honor. And if you read the Posey opinion closely, it talks about, okay, if you, you know, whether or not someone acts pursuant to their job duties is usually a mixed question of jury or fact. And the way I read the Posey opinion was, well, that conclusion that in this, in the Posey itself that the district court's ruling couldn't be overturned, that was based on the evidence in the record. And the evidence in the record was that the plaintiff in Posey, his speech was arguably job-related at most. There was, there were serious factual questions regarding that. I would argue, I would submit that, I would submit that notwithstanding the actual, you know, the ultimate holding in Posey itself, the analysis in Posey allows us to look at, okay, what are the facts of this case? If a rational trier of fact cannot find that the speech was expressed as a citizen, but in fact must have been expressed pursuant to the person's employment, pursuant to the person's regular job duties, then the, this Court is in a position to find, okay, that speech is not entitled to First Amendment protection, and the 1983 claim should have been dismissed. Robertson, is he still a sergeant? Yes. Is he African-American? No. Is he a minority? No. Okay. So as to the effect of Posey on this case, the facts related to his speech are largely undisputed in terms of what it was. You know, he, for instance, he saw officers he believed were intoxicated, and he reported that. He heard of potential excessive force by other officers. He reported that. Those are things that he did not as a do-well citizen, but as a sergeant with the Office of Public Safety. I mean, that was part of his job to do that, and the policies laid that out. There's no real dispute in the record that, you know, he was doing that out of the goodness of his heart. He was doing that because he was a sergeant with a police department, and he, you know, he heard of potential misconduct. He took actions in response to that in terms of, you know, making statements. And under Garcetti, recently, and all the controlling and most relevant case law, those statements are not protected under the First Amendment because it's not. Suppose he had observed this. Obviously, it's a hypothetical question. Suppose he had observed fellow officers planting evidence on factually innocent suspects, and he reported that. Would that have been part of his job duties? I believe so, yes. I mean, that's serious misconduct, and the policies do lay out. So it would be okay for his supervisors to deny him a promotion based on the fact of that reporting? The statement itself would not be entitled to First Amendment protection, but obviously there are other statutory provisions that he would be entitled to. And the Supreme Court in Garcetti talks about that. What about his statutes? What about his testimony in a – this is not a hypothetical question – his testimony in a civil action against the county? Doesn't he allege that was part of what he was allegedly retaliated against for? That particular statement kind of falls into a different category in the context of this case, Your Honor, because there was no – he didn't produce any evidence below as to exactly what he said. It was an employment-based class action, you know, involving the police department and I believe other law enforcement agencies. And that statement isn't attacked by us at this point as being barred by Garcetti because we simply don't know. And we don't – we're not saying that that was pursuant to his job duties. So in that sense, Garcetti is – Even if we were to agree with you entirely, the case could proceed on that theory? With respect to that speech, we would submit that it hasn't been shown to be a matter of public concern, which is another fundamental element of the Garcetti analysis. How does the Pickering balance apply to this case? We don't – Is this more a matter of internal discipline in the police department or does this affect more general matters? On appeal, Your Honor, we did not make a big issue about, you know, reversal is required under the Pickering balancing test. That's a very factually intensive issue in whether or not the actual disruption was caused by the plaintiff's statements. We think, as this case currently stands, based on the evidence in the record, there are multiple grounds for dismissing the First Amendment claim. First, his – you know, his reporting – That's part of your analysis here, isn't it, in this kind of a case? No, not if we go under the Garcetti analysis, Your Honor, because – Well, isn't the Garcetti just an extension of Pickering? Well, Garcetti adds a new step into the analysis before you even get to whether or not the speech causes enough disruption in the office to justify the action taken. What we're saying, Your Honor, is that the statements – first of all, the statements of misconduct by other officers, that was speech that was done because he was a sergeant with the police department, not because he was, you know, executing some rights as a citizen. So those statements would be not in fact the First Amendment protection under Garcetti. A second group of statements, such as statements relating to a personnel grievance or an isolated discrimination claim, those are things that are not matters of public concern. If you look at Conopy Meyers' Seminole Supreme Court case on that, essentially if it's an isolated case involving a personnel issue, those are not, as a matter of law, matters of public concern. And as to the testimony that he provided in this class action case – But it could be matters of public concern. Depends on what the speech is about, Your Honor. Depends on what the facts are. Well – That's what it's all about, see? Taking his – What are the facts? You know. As to the matters of public concern, obviously the statements about excessive force or officers who were intoxicated while on duty, those allegations, we're not asserting that those are not matters of public concern. Those do involve matters of public concern, but because they were reported internally pursuant to its job duties, it's barred by – And let's say that the chain of command just ignored all that. Let's say it's true. What he reported to them. But nothing's done about it. What is he supposed to do then? Just be a good boy and keep his mouth shut? Well, there are other avenues besides First Amendment relief, Your Honor. And as to the chain of command, I haven't gotten to that yet, but I do want to get to it. What other avenues of relief are there? You mean internally, huh? Well, there are grievances that public employees can pursue. There are civil service matters, procedures that are available to them. Those we're not taking advantage of in this case. Let's say you have those proceedings, and he points out this evidence we've been talking about. Are those hearings private or public? How would the public find out about what's going on? Well, the public would find out if he actually does, for his own personal reasons, exercise his right of citizenship. And let's say he writes a letter to the L.A. Times. We wouldn't argue that that would be barred by Garcetti because it's not. Obviously it's not. But he didn't do that. He engaged in these statements internally, and a lot of the statements were, as the district court found, in violation of the chain of command. But that in itself is not dispositive, is it? I think there are cases. I mean, there are a lot of cases that say if something is reported internally, it can become a matter of public concern and get beyond Garcetti and so forth. Right. Just the fact that it was reported internally is not. You have to look at the actual substance of the statement. And in terms of alleged misconduct by other officers, our position is that those are statements. Explain to me this chain of command business. As I understand it, the argument is that if you violate the chain of command, you lose First Amendment protection. Is that correct? Well, we've. Is that what you're getting at? That is our position, Your Honor. We found cases. I don't understand that. Explain. I haven't found any. I wasn't able to find any Ninth Circuit law on that particular question. Essentially, if a public employee is supposed to go through certain channels and this is especially important in an agency like a police department, where, you know, going through specific channels is vital to maintaining privacy rights of other officers, making sure that the incidents are properly investigated. I mean, there are many reasons as to why the chain of command is more important than the police department. Even if the object of your complaint is your superior? Well, that wasn't the case with Mr. Robinson. I think that would be a hypothetical. The formula here. Your position is if you violate the chain of command, no First Amendment protection, period. We found case law that says that, and at the very least. That's what I don't understand. I mean, what's the rationale? I mean, I don't understand why it's a good thing to, if you can, to go through the chain of command, but I'm not sure I understand why that is a First Amendment. I'm sorry. I believe there are important policy rationales, especially with respect to paramilitary organizations, that make sense for them to encourage employees, whatever level they're at, to follow the chain of command. And in the context of the qualified immunity test, it's the plaintiff's burden to establish that the First Amendment right, or whatever constitutional right that their claim is based upon, is their burden to establish, hey, we have a clearly established constitutional right to pursue this theory. And based on the one or two cases that we've identified in our briefs that say, well, violation of chain of command, you've got serious First Amendment problems, because that in and of itself strips you of the First Amendment rights. But on top of that, the plaintiff hasn't identified any cases that would suggest that, you know, he has a clearly established right to pursue that theory. What's your best case for the proposition that violation of the chain of command, if so facto, vitiates First Amendment claims? Would it be specific to a paramilitary organization? Because I think in the case that, the case that announced that, reached that holding, involved a, I believe a police department. And I think in that case the, the. What case is it? It's. Is it in your brief? It is in my brief. It's not the Olber case. And I could actually read you. I don't need to have it read. Just tell me the name of the case. Wagner v. City of Holyoke, Massachusetts, 404 F. 3rd, 504. And there's an additional Fed appendix case, Olber, OBER v. Ivanko. Wagner is from what circuit? Wagner is from the First Circuit. And there's a Third Circuit case, Olber v. Ivanko. Where's the 404 mass, 504? 404 F. 3rd, 504. Oh, you didn't say that. You said mass. I'm sorry, Your Honor. It's a First Circuit case from 2005. 404 Fed. Third. Third edition, 504. Okay. 504. Okay. What's the name of the case again? It's Wagner v. City of Holyoke, Massachusetts. And in that case, they affirmed the district court's granting a qualified immunity. The court held that a reasonable superior officer could have believed that he was entitled to discipline the officer regardless of the content of the speech when there was a violation of chain of command. Okay. Unless the Court has any questions. Is there some time for rebuttal? He reasonably believed. But why do you describe a police department as paramilitary? Well, it's you have ranks, you have very specific supervisorial hierarchies, like the Army or Marines or what have you. And I believe that's a term that's commonly used to describe an organization like a police department. You have rigid levels of who you report to. Well, you have that in industry, too, don't you? Well, we also have the use of, I guess, ability to implement or execute the law through force if necessary. And I think that has some of the reason for calling it a paramilitary organization. But I've come across it on many occasions. All right. Good morning, Your Honors. May it please the Court. Sanjay Bansal on behalf of Appelli, Richard Robinson. I don't wish to really belabor the point, and I'm not quite as eloquent as Mr. Ritt. So I'm going to focus in on a very succinct factor, and that is that we have a material issue, a factual dispute here, and that's essentially what's going on. Yeah. You know, sometimes we get these cases and the district court says, I've looked at all the facts, I think I know what the full picture is, and I've considered all of the facts, and I'm denying qualified immunity. And then sometimes we get a case where a judge says, at this point in the proceeding there are conflicting issues of fact, I can't reach a decision, and I'm going to let the case go forward. It may be that at the close of evidence I may come back to this issue and grant qualified immunity, but I can't do it at this point. Exactly, Your Honor. Which of this type is this case? I think it's the later. You know, it seems like Appelli hangs her hat on Garcetti. I'm going to just read to you a portion of the district judge's ruling in regard to Garcetti, and it sums it up fairly well. He writes, As Albert Garcetti implies, and district court cases interpreting Garcetti hold, that a general policy responsibility to report misconduct does not establish a day-to-day duty on the part of any person other than those, like internal affairs officers, whose expressed duties include the investigation of departmental misconduct. Here we have a sergeant, fairly law in the totem pole in this organization, reporting malfeasance and misconduct, not only when it is true. I'm going to read back a little, a little slowly. Sure. And this is in regards to speaking as a citizen. Yeah. So the speech is your question. All right. However, Garcetti implies, and district court cases interpreting Garcetti hold, that a general policy or responsibility to report misconduct does not establish a day-to-day duty on the part of any person other than those, like internal affairs officers, whose expressed duties include the investigation of departmental misconduct. Well, does Garcetti say that it has to be a day-to-day responsibility? It just says part of the responsibility is his job or something. Right. And here we have a sergeant. It's nowhere in his duties to report this type of misconduct. I don't believe appellants have proffered forth any evidence to indicate otherwise. And that is so. Well, there may be a general regulation that says that is part of his duties. I think there was in this case. And that's where, if you have just a generalized regulation, it's not necessarily incumbent upon this sergeant to report those. And I think what we're trying to do here is narrow it down. Was it this officer's duty to report these incidents? And aside from a generalized regulation. It doesn't sound like a very good argument to me. So what we've come down to is essentially the factual issue. Looking at it in light of Posey, it's the first prong. And I feel that appellees met this, is whether the speech was a matter of public concern. Here you have instances, allegedly, of officers drinking on the job, the beating of suspects, testifying in court, amongst other issues. And then the second prong would come down to pickering type of analysis, whether the state had a reason to treat the employee differently. And here it seems like appellants go ahead and intersperse their own test, which is, and discussed it briefly, the plaintiff failed to meet his burden of demonstrating clearly established right to First Amendment protection for internal speech expressed in violation of the chain of command. This is actually where the pickering analysis should take place in order for the efficiency of the department to move forward and balance that out. The district court seemed to be saying that it viewed chain of command as part of the pickering analysis, but not a foreclosure or a block. Do I read that right? Yeah. I don't believe they viewed it as dispositive. And also it's kind of counterintuitive to go ahead and say, well, it's part of your job duties, yet he's being retaliated for performing in the scope of his job duties. All right. Okay. Thank you. Thank you. I think your time's up. You know, I mean, you came up here and you were very quiet when you started out. You were reading to us. I thought, well, I'm going to just relax while you read. And then all of a sudden, you know, you come on like a hard charger. And you're gone. So you're probably drinking one of those energy beverages. Is this something you really need to tell us? I just want to quote one sentence. Okay. Go ahead. I want you to leave here happy. Well, I think this sentence helps encapsulate what I think the Garcetti opinion is about and the way it should be applied. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. And I think the speech regarding misconduct of other officers falls into that category without question. Thank you. Okay. Thank you very much. This will conclude today's session. And the court will recess until 9 o'clock tomorrow morning.
judges: Pregerson, Hawkins, Cudahy